# United States District Court
## District of Connecticut

FILED

2008 OCT 23 P 12: 13

|  |  |
|---|---|
| Duane Ziemba | Case No. 3:08cv1335 (JBA) |
|     Plaintiff, |  |
| VS. |  |
|  |  |
| Theresa Lantz, Brian Murphy, James Dzurenda, | Jury Trial Demanded |
| Mark Strange, Jeffrey McGill, Wayne Choinski, |  |
| Neftali Rodriguez, Fred Levesque, Mary Marcial, |  |
| Brian Siwicki, Paul Germond, Bryan Rae, |  |
| Joseph Casey, Jr., Mark Welch, Michael Stebenne, |  |
| Zieller, R. Trustman, Steven Helfand, Burger, |  |
| Patricia Ottolini, B. Hicock, Craig Burns, Pittinger, | Defendants Sued In |
| Zaidi, Gagne, Suzanna Ducate, Heather Gaw, | Individual And Official |
| Mark Frayne, Jill Haga, Nicole Quail, | Capacities |
| Kelly Schabot, Patrick Ward, Milna Rosario, |  |
| Bob Carey, Wendy Sanders, Dee Dee and |  |
| Paul Wilbur, |  |
|     Defendants. | October 21, 2008 |

## Amended Complaint
### Nature Of The Lawsuit

1. The defendants through their policies and customs, and actions and omissions have violated the Constitution of the United States, have intentionally ignored the laws and rulings of the federal Courts, and have subjected the plaintiff to the most grotesque, sadistic and pervasive pattern of Unconstitutional retaliation, deliberate

indifference to his serious medical and mental health needs, Seclusion and restraint without authorization by a physician, and abuse and torture that one can imagine.

## Jurisdiction

2. This action is brought pursuant to Sections 1983, 1985, 1986, 1988 of Title 42 of the United States Code and the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1313 and 1343 (1)(2)(3)(4). The plaintiff further invokes the pendent jurisdiction of this Court to prosecute causes of action arising under State law sounding in State Constitutional tort and common law tort pursuant to 28 U.S.C. § 1367(a).

## Venue

3. Venue is based upon U.S.C. §§ 1391 (b)(1) and (2). All the defendants reside in the District of Connecticut, and all of the events or omissions giving rise to the claims herein arose in the District of Connecticut.

4. For over 30 years, it has been the law of the land that government must "provide medical care for those whom it is punishing by incarceration", and that "deliberate indifference to serious medical needs constitute the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle V. Gamble, 729 U.S. 97, 103 (1976) (citation omitted). It is also well established that prisoners' have the Constitutional right to adequate mental health care. See

Jones v. City of Hartford, 285 F.Supp. 2d 174, 183 (D.Conn. 2003) (JCH).
And the right **not** to be retaliated against for filing internal
grievances, complaints and lawsuits. Franco v. Kelly, 854 F.2d 584
(2d Cir. 1988) ; Morello v. James, 810 F.2d 344, 347 (2d Cir. 1987) ; Indeed
the right to petition government for redress of grievances in both
judicial and administrative forums — **is** ' among the most precious
of the liberties safeguarded by the Bill of rights'. (quoting United
Mine Workers v. Illinosis State Bar Ass'n, 389 U.S. 217, 222 (1967)."
Graham v. Henderson, Supra, 89 F.3d at 80.   Thaddeus-X v. Blatter,
110 F.3d 1233 (6th Cir. 1997) Retaliation against inmate for exercising
his or her Constitutional rights is itself a violation of the
Constitution.

### Parties

5.  Plaintiff Duane Ziemba at all times relevant to this Complaint,
was a Sentenced inmate, in the care and custody of the
Connecticut Department of Correction (D.O.C).


6.  Defendant Theresa Lantz is a cabinet - level State official,
responsible to the State' chief Executive, the Governor of
Connecticut. Defendant Lantz is and was at all relevant times, the
Commissioner of the Connecticut Department of Corrections. As
Such, She is and was the administrative head of the Department,
responsible for administrating, coordinating and controlling the
operations of the Department and for the overall Supervision and
direction of all institutions, facilities and activities of the
Department. Defendant Lantz is and was Specifically responsible,

either directly or in a supervisory capacity, for : (a) the supervision, training, discipline and control of persons working for the Department ; (b) the establishment and enforcement of policies and practices ; and (c) ensuring that inmates' Constitutional rights are not violated.

7. Defendant Brian Murphy is and was at all relevant times, the Deputy Commissioner of the Connecticut Department of Correction. As such, he is and was a member of the Department's central office, responsible for administering, coordinating and controlling the operations of the Department, and for the overall supervision and direction of the institutions, facilities, and activities of the Department. Defendant Murphy is and was specifically responsible for : (a) the supervision, training, discipline and control of persons working for the Department ; (b) the establishment and enforcement of policies and practices ; and (c) ensuring that inmates' Constitutional rights are not violated.

8. During all times relevant to this Complaint, the defendants : James Dzurenda was Warden of Garner Correctional Institution (Garner) ;   Mark Strange was District Administrator of Garner ; Jeffrey McGill was Warden of Northern Correctional Institution (Northern) ;  Wayne Choinski was District Administrator of Northern ; Neftali Rodriguez was Deputy Warden of Northern ; Fred Levesque was Director of Population Management ;   Mary Marcial was Director of Programs and Treatment ;   Brian Siwicki, Paul Germond, Bryan Rae and Joseph Casey, Jr. were lieutenants ; Mark Welch,

Michael Stebenne and Zieller were guards ; R. Trustman, Steven Helfand and Burger were Directors of Uconn Correctional Managed Health Care ; Patricia Ottolini and B. Hicock were Health Services Administrators ; Craig Burns, Pittinger, Zaidi and Gagne were psychiatrists ; Suzanna Ducate, Heather Gaw and Mark Frayne were psychologists ; Jill Haga, Nicole Quail, Kelly Schabot, Patrick Ward and Milna Rosario were Mental Health Social Workers ; Bob Carey, Wendy Sanders, Dee Dee and Paul Wilbur were Registered Nurses.

9. During all times relevant to this Complaint, the defendants were acting under color of law, that is, under color of the Constitution, Statutes, laws, rules, regulations, customs and usages of the State of Connecticut and the United States.

10. In the manner described herein, the defendants, by uniting in the acts which constituted the unconstitutional wrong to the plaintiff, and by performing it under the stated circumstances which fairly charge them with the consequences which follow, incurred a joint and several liability for the acts and failure to act of each and all of the joint participants. All of the defendants actively participated in the described unconstitutional wrongful acts and misconduct by cooperation or request, and as to each act complained of, lent aid or encouragement to the wrongdoer, thus ratifying and adopting each wrongful act for their own.

11.  The defendants have subjected the plaintiff to the acts of retaliation, deliberate indifference, seclusion, and serious abuse and torture -- in the performance of their correctional duties, in that they jointly and severally owed him a duty to adequately treat him and to protect him from injury, inasmuch as he was in their care and custody.

## Facts

12.  On March 17, 2008 plaintiff was housed at Garner. He was in the Garner acute Inpatient Medical Unit (IPM hereafter).

13.  Garner is the Department of Correction's primary psychiatric facility, and the IPM-unit is whereat the Department places its most acutely psychiatrically disabled inmates.

14.  The plaintiff's admission into the IPM-unit was due to he was mentally ill, suicidal, and he was in dire need of psychotropic medication and mental health services.

15.  Plaintiff has a history of mental illness and multiple suicide attempts during his incarceration. He has been diagnosed as suffering from: (1) Major Depression; (2) P.T.S.D.; (3) Impulse Control Disorder; (4) Anxiety Disorder; and (5) Antisocial Disorder.

16.  On this day of March 17, 2008 the plaintiff's mental health Needs Assessment Score was an "MH5". An "MH5" Score is reserved for those inmates who, according to the Department's

Objective Classification Manual," are Severely impaired with an acute psychiatric condition Such as major psychosis, affective disorder or major depression or acute anxiety. These offenders present a potential danger to Self and/or others and are gravely disabled."

17.   Department psychiatrists had prescribed plaintiff: Paxil, Sinequan, Doxepin, Zoloft, Ativan, Klonopin, Busbar, and other psychotropic Medications.

18.   March 17, 2008 on the day that the plaintiff was transferred out of Garner and out of the IPM-Unit and to Northern, he was under the care of one Department psychiatrist defendant Craig Burns.

19.   Plaintiff was obviously and knowingly Severely impaired, gravely disabled, actively Suicidal, in an uncontrollable State of agitation, anxiety and depression and in imminent danger of harming himself.

20.   Simply put, plaintiff was in Garner's IPM-Unit, an Inpatient Hospital Medical Unit, with a Mental Health Needs Assessment Score of an "MH5", the highest needs Score that can be given. He Should of never been transferred out of Garner nor the IPM-Unit, and that he was transferred Unequivocally Constitutes deliberate indifference to his Serious medical and mental health needs.

21. Notwithstanding these facts, and notwithstanding the fact that the plaintiff was in the IPM-Unit, with a needs score of an "MH5" -- on March 17, 2008 with deliberate indifference to his life, Safety and Well being the defendants transferred him to Northern, whereat it was well known by each defendant that the plaintiff would be denied the level of mental health care he needed, and be denied adequate mental health care.

22. Northern is the Department's level five Supermax prison.

23. March 17, 2008 when plaintiff was transferred to Northern, immediately the defendants placed him into total Seclusion (Segregation) and restraint as a mental patient without any authorization by a physician.

24. Also, immediately his Mental Health Needs Assessment Score Was lowered to an "MH3", without a psychiatric assessment or evaluation being conducted.

25. The Supreme Court has held that the freedom from bodily restraint is at the core of the liberty interest protected by the due process clause. Youngberg v. Romeo, 457 U.S. 307, 316, 73 L.Ed. 28, 102 S. 2452 (1982). Thus, even a prisoner has a Constitutionally protected interest in "conditions of reasonable care and safety [and] reasonably nonrestrictive confinement conditions ....[which] comport fully with the purpose of ... [the] commitment." Id at 324. And See Buckley v. Rogerson, 133 F.3d 1125; 1998 U.S. App.

LEXIS 805 ; <u>Burks v. Teasdale</u>, 429 F. Supp. 650 (W.D. Mo. 1980) ; and <u>Negron v. Preiser</u>, 382 F. Supp. 535 (S.D.N.Y. 1974) -- The Constitutional right has been clearly established : "precluding Segregation or restraint of mental patients without medical approval, and that the use of Seclusion and restraint for mental patients without authorization by a physician is Unconstitutional."

<u>First Attempted Suicide</u>

26. Defendants Lantz, Murphy, Dzurenda, Strange, McGill, Choinski, Rodriguez, Levesque, Marcial, Trustman, Helfand, Burger, Ottolini, Hicock, Burns, Pittinger, Zaidi, Gagne, Ducate, Gaw, and Frayne were each personally involved in and responsible for the plaintiff being Unconstitutionally with deliberate indifference transferred out of the IPM-Unit at Garner and to Northern on March 17, 2008 and his remaining at Northern, in that : (a) They participated directly in the Constitutional Violations ; (b) After being informed of the Violations, they failed to remedy the wrong ; (c) They created a policy and custom, and they allowed the continuance of a policy and custom, under which inmates would be transferred out of Garner and IPM-Unit and be deprived of adequate medical and mental health care ; (d) They were deliberately indifferent in Supervising and training Subordinates who committed the wrongful acts described herein ; and (e) They exhibited deliberate indifference to the plaintiff's rights by failing to act on information indicating that Unconstitutional acts were occurring.

27. On March 17, 2008 when plaintiff was transferred from Garner to Northern, he arrived at Northern at approximately 1:15 p.m.

28. He was immediately placed in restraints and seclusion. He was placed into a stripped segregation cell in the medical unit.

29. Between 1:15 p.m. and 2:45 p.m. plaintiff emphatically informed defendants Frayne, Haga, Carey, Siwicki, Welch and others that he needs help, he wants to kill himself.

30. Defendant Frayne stated to the plaintiff: "You're not at Garner anymore, no one is going to help you here, do what ever you want."

31. Defendants Frayne, Haga, Carey, Siwicki, and Welch were informed and they actually knew that plaintiff was asking for help, and threatening to commit suicide. Notwithstanding these facts they failed utterly and uniformly to take appropriate steps to protect him, they failed to take any action to help him, and they failed to provide him, or to ensure the provision of appropriate medical and mental health care.

32. As a consequence of the defendants' deliberate indifference to the plaintiff's serious medical and mental health needs, at approximately 2:00 p.m. the plaintiff self mutilated himself and attempted to commit suicide by deeply cutting open his left

arm and reopening an existing wound.

33.  Defendant Quail, later this day at 2nd Shift, refused to even speak with the plaintiff, despite the fact that several hours earlier this same day plaintiff had attempted suicide, and despite the fact that the plaintiff repeatedly requested treatment and to speak with her. Defendant Quail had the responsibility, authority and obligation to provide the plaintiff adequate mental health care -- psychological treatment, assessment, evaluation, treatment planning, support, therapy, counseling, therapeutic care, or educational or rehabilitive treatment -- but she deliberately failed and refused to do so.

34.  Incredibly, prior to, during and following this incident no psychiatrist, psychologist or any mental health staff provided the plaintiff any meaningful mental health care. The defendants failed utterly and uniformly to provide the plaintiff any meaningful treatment, and failed to ensure the provision of adequate mental health services. Thereby knowingly disregarding an excessive risk to the plaintiff's life, health and safety and knowingly subjecting him to pain, and physical and mental injury.

<u>Second Attempted Suicide</u>

35.  March 17, 18, 19, 20, 21 and 22, 2008 the defendants simply left the plaintiff locked in ~~total~~ seclusion, inside the stripped segregation cell in Northern's medical unit.

36. Defendants Pittinger, Gaw, Frayne and Dee Dee did tour almost each morning, however, they simply looked at the plaintiff through the locked cell door's window.

37. During these above described Six (6) days the defendants did not at anytime remove the plaintiff from the locked Segregation cell to provide him mental health Services.

38. Indeed during these Six (6) days the plaintiff was Kept ~~totally~~ locked inside the cell and was not allowed out of the cell for any reason.

39. During these Six (6) days the defendants failed and refused to provide the plaintiff obviously needed mental health Services.

40. During these Six (6) days the defendants, in fact, maliciously subjected the plaintiff to horrific and Subhuman and Subanimal treatment and conditions as described herein.

41. It was Known to each defendant that it was impossible for them to be able to provide the plaintiff any form of adequate mental health care through the locked cell door. Especially when the cell air vents are So loud making hearing through the locked cell door almost totally impossible.

42. As a direct consequence of the defendants ongoing, Systemic, repeated, routinely, utter, uniformly, deliberate indifference to

the plaintiff's serious medical and mental health needs, on March 22, 2008 sadly and upsettingly plaintiff again attempted to commit suicide.

43. Prior to the plaintiff attempting to commit suicide, he emphatically informed defendants Stebenne, Schabot and Sanders (by yelling) that he needs help immediately and that he is going to kill himself. These defendants intentionally ignored all of the plaintiff's pleas for help. They deliberately failed and refused to take any action to help him, and failed to provide or to ensure the provision of obviously needed mental health services.

44. On this day March 22, 2008 at approximately 1:45 p.m., the plaintiff again attempted suicide by taking the sharp plastic top from a deodorant and deeply cutting open his left arm, sustaining serious injury. The defendants provided him the sharp plastic.

45. Doctor Njuko provided the plaintiff medical care, by closing the wound utilizing four (4) internal sutures and eight (8) external sutures.

46. Defendant Zaide via telephone ordered a mental health continuous observation for plaintiff and for him to be issued a paper gown and a paper blanket. This defendant - psychiatrist did not order or authorize for the plaintiff to be placed in any restraints.

47. Following this attempted suicide by the plaintiff, defendant

Zaide did not and no other physician ordered or authorized for the plaintiff to be placed in restraints. (emphasis added).

48. With deliberate indifference to the plaintiff's serious medical and mental health needs defendant Zaide failed to provide, order, or ensure the provision of appropriate mental health care for the plaintiff. Completely inconsistent with the contemporary standards of care, this defendant failed to provide or ensure the provision of any form of psychological care, or assessment, or evaluation, or treatment planning, or support, or therapy, or counseling, or therapeutic treatment, or educational or rehabilitive care. Thereby knowingly disregarding an excessive risk to the plaintiff's life, health, safety and well being. And knowingly subjecting him to pain, and physical and mental injury.

49. Defendants Rae, Germond and Sanders in complete violation of defendant Dr. Zaide's orders, and with deliberate indifference to the plaintiff's safety, after plaintiff had received medical care for his wound, these defendants - - shockingly are responsible for chaining the plaintiff up in restraints. To maliciously and grotesquely torture the plaintiff, they placed him in handcuffs, leg irons, a tether chain, black box and waist chain. Thereon they locked him in a cell alone in these said restraints and left him in this horrific condition.

50. In the manner described above, defendants Rae, Germond and Sanders are responsible for placing the plaintiff in the

restraints. They each committed this act without any medical approval and without any authorization by a physician. Thereby violating the plaintiff's Constitutional rights. Id. See cases cited.

51. Defendant Rodriguez at 2:45 p.m. was contacted and informed of this above described conduct by his subordinates.

52. Defendant Rodriguez as the responsible Supervisory Official : (a) Participated directly in this Constitutional violation ; (b) After being informed of the violation, he failed to remedy the wrong ; (c) He was deliberately indifferent in Supervising and training these Subordinates who committed the wrongful acts described herein ; (d) He exhibited deliberate indifference to the plaintiff's rights by failing to act on the information indicating that Unconstitutional acts were occurring.

53. At approximately 4:30 p.m. in the cell the plaintiff had placed the waist chain around his neck, like a noose, choking himself, again attempting Suicide.

54. Following plaintiff again attempting Suicide as outlined above, defendants Casey, Sanders, Ward, Wilbur and Rodriguez are responsible for placing the plaintiff into four-point restraints. To even further maliciously and grotesquely torture plaintiff they chained him down by his hands and feet.

55. In the manner described above, these five (5) defendants

committed this act without any medical approval whatsoever, and without any authorization by a physician. Thereby violating the plaintiff's Constitutional rights. Id. See cases cited.

56. The Department's Administrative Directive 6.5 Use of Force, requires: "The inmate's arms and legs shall be restrained such that discomfort to the inmate is minimized." In violation of this Directive mandate, when the defendants four-pointed the plaintiff, they intentionally and maliciously stretched his arms and legs out, painfully spread eagle, to inflict ~~torture~~ to him for several hours. See video.

57. Several hours into the ~~torturous~~ four-point restraint, on video plaintiff pleaded to use the bathroom. The defendants on video intentionally denied him use of the toilet and forced him to urinate on himself while four-pointed. Then they left him chained down soaked in urine.

58. Prior to, during, and following the aforementioned facts, circumstances and Constitutional violations, the defendants ongoing, systemic, repeated, routinely, utterly, uniformly and with deliberate indifference denied the plaintiff Constitutionally adequate medical and mental health care.

59. On March 31, 2008 -- fifteen days after the plaintiff was transferred to Northern, the defendants with deliberate

indifference to the plaintiff's serious medical and mental health needs, and to his life, safety, health and well being, discharged him from Northern's medical unit and unconstitutionally moved him into an Administrative Segregation unit and cell at Northern. Thereby placing him into profound Seclusion without any form of authorization by a physician.

## Third Attempted Suicide

60. On April 30, 2008 defendants Pittinger, Frayne and Dee Dee saw the plaintiff due to he had filed grievances and complaints regarding the denial of adequate mental health care. The plaintiff clearly addressed the facts of he is not doing well and that he needs help.

61. In direct response defendants Pittinger, Frayne and Dee Dee were extremely hostile towards plaintiff because he filed grievances and complaints against them, as described further herein.

62. In direct response to plaintiff filing the grievances and complaints against these defendants, these defendants in retaliation, deliberately, denied him needed mental health care. They stated that "because he is filing grievances against them they are stopping his medication Klonopin."   Thereafter in retaliation the plaintiff's medication Klonopin was stopped.

63. The plaintiff thereafter suffered serious adverse withdrawal affects from the medication Klonopin being stopped.

64. May 1 through until May 13, 2008 the plaintiff verbally and through numerous written requests pleaded for mental health staff (Defendants) to see him and help him. Each and all of his requests were deliberately and in retaliation totally ignored.

65. May 13, 2008 directly because of the deliberate denial of adequate mental health care, the plaintiff lost all endurance and again he attempted to commit suicide, by deeply cutting open his left arm.

66. Plaintiff sustained very serious injury. Deeply cut an artery, was bleeding to death, he almost died. He was rushed to Uconn Hospital for emergency medical treatment. The wound requiring 12 stitches.

67. Incredibly, during this same time defendant Rosario, who was the plaintiff's assigned mental health social worker, and defendant Frayne her supervisor, both issued and approved for a retaliatory Disciplinary Report (D.R.) for: "Self Mutilation" to be filed against the plaintiff.

68. Defendants Rosario and Frayne both, in fact, issued and approved this said D.R. against the plaintiff in sole retaliation due to plaintiff had filed justified grievances and complaints against mental health staff, them, the defendants denying him needed adequate treatment.

69. Defendant Rosario stated to plaintiff: "You want to file grievances

against mental health and blame us, So I ordered the D.R. to be filed against you, even though it involved your mental illness."

70. Defendants Rosario and Frayne in order to Subject the plaintiff to this overt retaliation -- they did in fact violate both Administrative Directive 9.5 and The Office of Protection And Advocacy For Persons With Disabilities (The O.P.A.) Settlement mandate, No. 3:03cv1352 (RNC) -- Which both unequivocally State and mandate the following, if : "The behavior for which the Disciplinary Report (D.R.) is given is a result of the inmates' mental illness, or if disciplining the inmate would aggravate the inmate's mental illness, the D.R. report Shall not be delivered to the inmate and Shall be dismissed." (emphasis added).

71. Defendant Frayne the Supervising psychologist outrageously Stated : "Rosario and him determined that the D.R. and the incident did not involve his mental illness and thats why they approved for it to be Served on him."

72. It's ludicrous that these defendants falsely alleged the above, when all material facts prove that the plaintiff has been diagnosed as Seriously mentally ill and the Said D.R. and incident thereto did in fact involve his mental illness of -- Sadly and upsettingly he Seriously attempted to kill himself, hit an artery, was bleeding to death, almost died, was rushed to Uconn emergency room. Indeed these defendants with a known long history of corruption and who

are also very well known to be extremely dangerous -- to out right allege that these described facts did not involve any mental illness, and for them to of approved for this said D.R. (clearly retaliatory) to be issued and delivered against the plaintiff is overwhelming material facts of: (a) Their deliberate indifference to the plaintiff's serious medical and mental health needs; and (b) The serious unlawful retaliation they subjected plaintiff to due to his exercising his Constitutionally protected rights by filing grievances and complaints against the defendants.

73.   Defendant McGill Stated: "The D.R. is in violation of Directive 9.5, and the O.P.A. Settlement mandate, for plaintiff not to worry about it, he will take care of it." Defendant McGill as the Warden and highest level supervisory official of Northern Stated this.

74.   As aforedescribed, on May 13, 2008 in retaliation and in violation of Directive 9.5, and O.P.A. 3:03 cv 1352 (RNC) Settlement mandate, the plaintiff was issued the D.R. for Self Mutilation. Then over a month later on June 20, 2008 defendant McGill, approved and condoned by the other defendants, especially Frayne and Rosario, had his subordinates take plaintiff to a D.R. hearing and find him guilty of the said D.R. for Self Mutilation. Plaintiff was thereon given grave sanctions including an additional 60 days locked in segregation phase one -- profound Seclusion without any authorization by a physician.

75.  The defendants issuing the said D.R. and then finding plaintiff guilty of the D.R. Unjustifiably, seriously aggravated and exacerbated his mental illness. And on June 20, 2008 same day they found him guilty of D.R., he again attempted to commit suicide as described herein.

76.  The defendants subjecting the plaintiff to the grotesque, sadistic and pervasive retaliation, deliberate indifference, profound seclusion, restraint, and abuse and torture -- then in violation of D.O.C. Directives and policy Unjustifiably finding him guilty of the said D.R. on June 20, 2008, Knowingly seriously aggravated and exacerbated his mental illness, resulting in him again attempting to commit suicide as described herein.

77.  Notwithstanding the fact that on May 13, 2008 plaintiff at least for the third time attempted suicide, notwithstanding the fact that he sustained serious injury, notwithstanding the fact the he deeply cut an artery, was bleeding to death and almost died, and notwithstanding the fact the he obviously required mental health services ---- prior to, during and following this incident the defendants ongoing, systemic, repeated, routinely, utterly, uniformly, and with deliberate indifference denied the plaintiff adequate mental health care. No meaningful psychological treatment was provided whatsoever. No assessment, no evaluation, no treatment planning, no support, no therapy, no counseling, no therapeutic care, and no rehabilitive care was provided, offered or ensured.

## Fourth Attempted Suicide

78. As aforedescribed, the defendants on May 13, 2008 Unjustifiably issued the D.R. against the plaintiff for Self mutilation. Then on June 20, 2008 they Unjustifiably found him guilty of this D.R., which Seriously aggravated and exacerbated his mental illness.

79. Plaintiff on this date June 20, 2008 following being Unjustly found guilty of the D.R. became Suicidal and was placed on Suicide Watch in Northern's medical Unit.

80. Defendant Zieller was assigned to watch the plaintiff on One-on-one continuous observation Status, but With deliberate indifference to plaintiff's life and Safety was **not** observing the plaintiff.

81. With deliberate indifference to the plaintiff's life and Safety, the defendants failed to even check the cell for dangerous items and in the cell was a Sharp piece of metal which the plaintiff used to Seriously cut his Wrist and arm attempting to commit Suicide once again. He Sustained Serious injuries.

82. Prior to, during and following this incident, the defendants With deliberate indifference to the plaintiff's Serious medical and mental health needs, denied the plaintiff Constitutionally adequate mental health care.

## Exhaustion Of Administrative Remedies--Deliberate Indifference To Serious Medical And Mental health Needs--And Personal Involvement Of Defendants

83. April 1, 2008 plaintiff filed a Health Services Grievance which Stated: "Facts, on March 17, 2008 I first arrived here at Northern from Garner. I was placed in the medical Unit. I was Severely depressed/Suicidal. I very Specifically asked and yelled for help to guard Welch, Dr. Frayne, C.S.W. Nicole Quail, C.S.W. Jill Haga, nurse Bob Carey (defendants) and others who I Saw. They all deliberately ignored me and refused to help me. I was in total Seclusion, locked inside cell, alone, Where I Sadly lost all endurance and I attempted Suicide by deeply cutting my left arm open. Requested Resolution: (1) Adequate mental health care; (2) Investigation conducted."

Incredibly this level one Grievance was officially date Stamped August 24, 2008 -- five months after it was filed and the defendants failed and refused to respond to it. Directive 8.9 mandated a Written response to it within ten (10) business days.

May 7, 2008 plaintiff appealed it to level 2, and on June 12, 2008 he appealed it to level 3. Finally Six months after it was filed defendant Hicock Unjustifiably denied it on September 11, 2008.

84. April 16, 2008 plaintiff filed another Health Services Grievance Which Stated: "This is a medical emergency grievance. Facts, on March 17 and 22, 2008 here, I Seriously attempted to commit Suicide. Since being transferred here on March 17, 2008 I have been totally denied adequate mental health treatment. I am

Severely depressed and feel like dying. I have received no response to all of my Inmate Requests I have sent to medical and mental health staff. Also my other grievances I filed have not been acted on. I am pleading with mental health staff to please immediately help me, please provide me emergency treatment. This is a true emergency grievance because I need help coping and treatment now before I end up dead."

This emergency Grievance was officially date stamped April 23, 2008, but was never responded to or acted on. Directive 8.9 mandated a written response to it within ten (10) business days.

85. Another example of the defendants' deliberate indifference. April 16, 2008 plaintiff filed another Health Services Grievance which stated: "Attempted informal resolution, please see attached request on form CN9602 dated 4/1/08 to Dr. Frayne (defendant); which he has failed to respond to, resolve, or act on, or return. Facts, I was housed in medical unit from 3/17/08 until 3/31/08 on suicide watch. During this entire time I was unconstitutionally locked inside cell for 24 hours a day, was denied warm clothing and bedding, there was already feces on walls of cell, was denied adequate food, was tortured in 4-point restraints. And mental health staff completely denied me needed treatment, therapy and counseling. Moreover: I was completely denied adequate mental health care very deliberately and seriously abused. With deliberate indifference to my life, safety and well being mental health staff (defendants) provided me sharp plastic in order for me

to attempt Suicide, I deeply cut my left arm, which needed 12 stitches. I have been and actively am being denied adequate mental health care here at Northern."

Defendant Frayne on April 30, 2008 compromised this Grievance, but took no other action and failed to remedy the wrong. Clearly the facts in this Grievance and lawsuit are meritorious, as the evidence shows that the plaintiff was denied adequate mental health care.


86. For another example of the defendants' deliberate indifference. April 16, 2008 plaintiff filed another Health Services Grievance which stated:"My transfer here to Northern has/is adversely affected my mental health, life, safety and well being. The serious confinement and abuse and conditions constituting torture in my case has and is very adversely affecting my mental health, life, safety and well being. I have in fact been totally denied adequate mental health care here. I've been denied any form of therapy, counseling, rehabilitative treatment, etc. Each day my mental health condition is getting worse."   Defendant Frayne on April 29, 2008 responded to this Grievance and alleged; "It is duplicate to Grievance dated April 16, 2008."   Defendant Frayne had actual and constructive notice of these Unconstitutional violations and demonstrated deliberate indifference by failing to act.


87. For another example of the defendants' deliberate indifference. April 29, 2008 plaintiff filed another Health Services Grievance which stated: "Please see the attached hereto request on form CN9601

dated 4/11/08 to Warden McGill (defendant), and also I sent a 2 page letter dated 4/7/08 to Commissioner Lantz and Deputy Commissioner Brian K. Murphy (defendants). In violation of Directives 9.6 and 2.17, they have failed and refused to respond or resolve serious matter. Facts, at Northern, in medical unit, on or about 3/26/08 LT. Casey with deliberate indifference to my life, safety and well being placed me in Incell Restraints due to my self harm. I then used the said chains to hang myself, etc. LT. Casey then placed me in 4-point restraints not adequately clothed and while in these 4-point restraints — on video I requested to use the bathroom and stated how I could not hold it. All staff intentionally refused to provide the provision for me to use the bathroom, thereby forcing me to urinate on myself while 4-pointed, and they left me soaked in urine. This Grievance officially filed on 4/29/08, and I hereby certify that copies were mailed to the following on this 29th day of April, 2008: Commissioner Lantz, and Deputy Commissioner Brian K. Murphy (defendants)."

On May 8, 2008 defendant McGill unjustifiably rejected this Grievance, and on August 11, 2008 defendant Choinski unjustifiably rejected the level 2 appeal of this Grievance.

To date, neither defendants Lantz, nor Murphy, nor any of the other defendants have done anything to address, remedy, or to protect the plaintiff from the unlawfulness and abuse.

88. For another example of the defendants' deliberate indifference. April 30, 2008 plaintiff filed another Health Services Grievance which stated: "This medical Grievance is in addition to my

already filed grievances dated April 1, 2, 16 and 29, 2008 -- all of which have not been responded to or acted on. I have been and I am being totally denied adequate mental health care. Which did cause me to already attempt to commit suicide two (2) times here on March 17 and 22, 2008. I am severely depressed and suicidal, I honestly cannot take the confinement here and it is very hard to make it through each day. No one has done anything to help me. Please immediately provide me adequate mental health care, please act on and respond to my other grievances filed, and investigate violations before I end up dead due to being denied treatment. I need proper treatment."

To date, the responsible people for responding to this Grievance, defendants Frayne, Gaw and Hicock, have not responded to it, or have done anything to address, remedy, or provide or ensure the provision of appropriate medical or mental health care.

89. For **another example** of the defendants' deliberate indifference. April 30, 2008 plaintiff filed another Health Services Grievance which stated: "This is an emergency medical and mental health grievance. On this above date (April 30, 2008), at 2nd shift I had a mental health crisis emergency and I was truly in need of crisis intervention. Notwithstanding that the unit officer told C.S.W. Nicole Quail that it was an emergency for me to be seen, she deliberately refused to see me. And notwithstanding the fact that I personally stated to C.S.W. Nicole Quail (defendant), that it's an emergency, I'm in a crisis and need to be seen, she refused to talk with me, or take me out of cell for

needed treatment. Requested Resolution: (1) Please have mental health staff immediately see me ; (2) Investigation ; (3) Disciplinary action taken against Nicole Quail ; and (4) staff to be adequately trained."

Incredibly defendant Frayne responded to this Emergency Grievance three (3) Month after it was filed on July 1, 2008, and compromised it, but took no other action. Directive 8.9 mandated that this Grievance be responded to in writing within ten (10) business days. Defendant Frayne the Supervisory Official had actual and constructive notice of these Unconstitutional Violations and he demonstrated deliberate indifference by failing to act.


90. For another example of the defendants' deliberate indifference. May 1, 2008 plaintiff filed another Health Services Grievance which Stated: "This is an emergency medical/mental health grievance. May 1, 2008, today, 2nd Shift, I had a mental health crisis emergency and I therefore requested for mental health staff to see me. Unit staff told C.S.W. Pat Ward (defendant) to see me, and notwithstanding that I personally told Pat Ward it's an emergency I need to be seen, Pat Ward intentionally refused to talk to me or help. Requested Resolution: (1) To be seen by mental health staff and treated ; (2) Adequate mental health care ; and (3) Staff adequately trained."

Incredibly defendant Frayne failed to respond to this Grievance until three Months lated on July 1, 2008, and he Compromised it, but took no other action. Directive 8.9 mandated

that this Grievance be responded to in writing within ten (10) business days. Defendant Frayne the Supervisory official had actual and constructive notice of these Unconstitutional Violations and he demonstrated deliberate indifference by failing to act.

91. For another example of the defendants' deliberate indifference. June 5, 2008 plaintiff filed another Health Services Grievance which Stated: "Attempted Informal Resolution, See the attached request on form CN9601 to Dr. Frayne (defendant) dated May 21, 2008. Which he has failed to respond to, act on, or return in violation of Directives 9.6 and 2.17. (With Deliberate Indifference).

Facts, on May 21, 2008 C.S.W. Rosario (defendant), at 2nd Shift in IW-Unit Saw me in medical Sreening room. I respectfully asked her if She was the one who approved of the May 13, 2008 Self Mutilation D.R. to be filed against me? She answered yes and Stated:  'You want to file grievances against mental health and blame us, So I ordered the D.R. to be filed against you, even though it involved your mental illness'.

June 5, 2008 copies mailed to Uconn Dr. Helfand and Wethersfield Patricia Ottolini."

   On July 15, 2008 plaintiff appealed this Grievance to level 2, and on August 25, 2008 plaintiff appealed it to level 3 and mailed copies to: Defendants Patricia Ottolini, Trustman, Burger and Ducate.

   Defendants Frayne, Gaw, Gagne and Hicock were responsible for responding to this Grievance, and defendants Helfand, Ottolini, Trustman, Burger and Ducate received copies of this

Grievance and as the responsible Supervisory officials they were responsible for taking action to remedy the wrong, but they failed and refused to do so. To date, neither defendants Frayne, Gaw, Gagne, Hicock, nor any of the other defendants have responded to this Grievance, or has done anything to address, remedy, or provide any meaningful mental health care to the plaintiff. And each one of these defendants intentionally failed and refused to take action to stop the blatant retaliation being inflicted against the plaintiff -- they intentionally failed to protect the plaintiff from the ongoing blatant retaliation.

92. For another example of the defendants' deliberate indifference. June 6, 2008 plaintiff filed another Health Services Grievance which Stated: "Please See attached hereto request to Dr. Frayne (defendant) dated May 19, 2008. Which he has failed to act on, respond to, or return (With Deliberate Indifference). Facts, I am hereby respectfully challenging the Department level policy and custom -- and Staffs' deliberate indifference regarding inadequate mental health care as Unconstitutional. I have been denied adequate and meaningful mental health treatment due to inadequate Staffing, inadequate assessment, inadequate therapy, Counseling and rehabilitative treatment. The indisputable facts prove that there is no form of treatment by any psychiatrist or psychologist or other mental health Staff. In fact psychiatrist Pittenger and psychologist Frayne (defendants) have denied me treatment Utterly and Uniformly. I've been deliberately denied adequate treatment, by being totally denied

meaningful assessments, therapy, counseling, educational, or rehabilitive care. Which has and is adversely affecting my diagnosis and mental health condition. Please provide me adequate and meaningful treatment."

This June 6, 2008 Grievance was officially date stamped July 19, 2008 as being received —— Shockingly over a month later. To date, neither defendants Frayne, Gaw, Gagne, Hicock, nor any of the other defendants have responded to this level one (1) Grievance, despite the fact that Directive 8.9 mandated a written response within ten (10) days.

Plaintiff appealed this Grievance to level 2 on July 16, 2008, and to level 3 on August 25, 2008.   Finally four (4) months after this Grievance was filed on September 11, 2008 defendant Hicock responded to it and with deliberate indifference denied it. Each one of these defendants had actual and constructive notice of these Unconstitutional Violations and they demonstrated deliberate indifference by failing to act.


93. For another example of the defendants' deliberate indifference. June 10, 2008 plaintiff filed another Health Services Grievance which Stated : " Please see the attached hereto request on form CN9602, which was mailed to Medical Director Patricia Ottolini (defendant) on May 22, 2008. In violation of Directive 9.6 she has failed to respond, act on, or return this request within 15 calendar days. (With Deliberate Indifference).   Facts, on April 30, 2008, in IW-Unit Dr. Pittinger, Dr. Frayne and Dee Dee (defendants) saw me. They were hostile due to my filing grievances and complaints regarding

the denial of adequate mental health care. I clearly addressed the facts of I am not doing well, need help, etc. In response and clear retaliation they stated my medication Kolonipin at night is being stopped, and then it was stopped. Thereafter I suffered bad adverse affects and my already critical condition became a true crisis. May 1 through to 13th I verbally and through numerous written requests pleaded for mental health staff to see me and help me. All my requests were ignored. May 13, 2008 I lost all endurance and I attempted suicide by deeply cutting my left arm, requiring 12 stitches. Which was/is the result of deliberately being denied needed medication, crisis intervention, therapeutic care and proper treatment. Requested Resolution: (1) Investigation ; (2) Proper meaningful treatment ; and (3) Disciplinary action taken against all wrongdoers."

This June 10, 2008 Grievance was officially date stamped August 3, 2008 but was never responded to.

July 21, 2008 plaintiff appealed this Grievance to level 2 and mailed copies of this level 1 and 2 Grievance to defendants Sanders, Ottolini, Burger, Ducate and McGill. To date, neither defendants Frayne, Gaw, Gagne, Hicock, nor any of the other defendants have responded to this Grievance, or have done anything to address, remedy, or provide or to ensure the provision of appropriate medical and mental health care to the plaintiff.

94. For another example of the defendants' deliberate indifference. July 7, 2008 plaintiff filed another Health Services Grievance which

Stated: "Please See the attached 2 requests on forms CN9601 to Dr. Frayne (defendant) dated May 21, 2008 and June 12, 2008. Facts, respectfully this grievance is hereby against Dr. Frayne. Specifically, Dr. Frayne, the Supervisory official has blatantly failed and refused to respond to the 2 attached requests dated May 21, 2008 and June 12, 2008. Thus in complete violation of D.O.C. Directives 9.6 and 2.17 which mandated a response within 15 days. Indeed the facts show that Dr. Frayne has with deliberate indifference failed to respond to, act on, or resolve every single request which I have submitted to him. Requested Resolution: (1) Dr. Frayne as mandated to respond to the 2 attached requests; (2) Disciplinary action taken against Dr. Frayne for his confirmed misconduct; and (3) Action taken to remedy the wrong and unlawfulness addressed in my attached 2 requests."

Defendant Hicock on August 5, 2008 unjustifiably denied this level one Grievance.

August 25, 2008 plaintiff appealed this Grievance to level 2, and copies of this level 1 and 2 Grievance were sent to defendants Trustman, Helfand, Burger, Ottolini and Ducate. Defendants Frayne, Gaw, Gagne, Hicock, Trustman, Helfand, Burger, Ottolini and Ducate, each had the responsibility, authority and obligation to respond to, act on, remedy the wrong, and to take corrective action to stop the deliberate indifference, but they each deliberately failed and refused to do so.

95. For **another example** of the defendants' deliberate indifference. July 20, 2008 plaintiff filed another Health Services Grievance

Which Stated: "Copies mailed to ; McGill, Ottolini, Burger, Ducate, Trustman, and Helfand.   Facts, this grievance is against Dr. Frayne. As a consequence of his actions and omissions, on June 20, 2008 Sadly and upsettingly he was and is responsible for my mental health condition being Severely aggravated and exacerbated. As a result I lost all endurance, became Suicidal, and I attempted to commit Suicide. Sustaining Serious injury requiring Stitches. Chronological Statement of facts relevant to this June 20, 2008 incident. Specifically on May 13, 2008 Sadly, upsettingly I attempted Suicide. Deeply cut my left arm, hit an artery, was bleeding to death. I was rushed to Uconn Hospital for emergency medical care. During this Same time incredibly C.S.W. Rosario (defendant) approved/ordered for Disciplinary Report (D.R.) for Self Mutilation to be issued/delivered against me. In retaliation.   Which was and is in complete violation of both D.O.C. Directive 9.5 and O.P.A. Settlement mandate No. 3:03 cv 1352 (RNC) –– Which both unequivocally mandate following : "If the behavior for which the D.R. report is given is a result of the inmates' mental illness, or if disciplining the inmate would aggravate the inmate's mental illness, the D.R. report Shall not be delivered to the inmate and shall be dismissed." Following the aforedescribed May 13, 2008 attempted Suicide, I returned from Uconn Hospital, was in medical unit cell, was issued/delivered Said D.R., in violation of the above mandates. I clearly addressed all of the above facts to Dr. Frayne and he incredibly told me that : 'Rosario and him determined that

the D.R. did not involve my mental illness and thats why they approved for it to be served on me." Then over a month later, I was taken to D.R. hearing and found guilty of said D.R. and issued sanctions. With deliberate indifference to my life, health, and safety Rosario and Dr. Frayne the Supervisory Official, deliberately failed to enforce or comply with the above Directive and Settlement mandates. Which Severely aggravated/exacerbated my mental health condition, and on the very same day June 20, 2008 that I was found guilty of D.R., as a result I lost all endurance and again attempted suicide, sustaining further serious injury. Prior to my attempting suicide guard Zieller (defendant) was assigned to one-on-one to watch me, but he was not observing me. Prior to, during, and following both aforedescribed attempted suicides I was denied adequate mental health care. This is a permanent record of Rosario and Dr. Frayne are extremely corrupt, dangerous and responsible for the serious damages."

This level one Grievance was officially filed on July 20, 2008, but date stamped as received on August 3, 2008, and never responded to.

August 25, 2008 plaintiff appealed this Grievance to level 2 and it also was never responded to. Defendants Frayne, Gaw, Gagne, Hicock, McGill, Ottolini, Burger, Ducate, Trustman and Helfand -- and each of them had the responsibility, authority and obligation to respond to this level 1 and 2 Grievance, address it, remedy the wrong and to take appropriate action, but they failed and refused to do so. As the Supervisory officials they

were informed of and aware of this serious retaliation, deliberate indifference, violation of Directives and settlement mandate and unlawfulness taking place, and they approved of it and condoned it.

96. For **another example** of the defendants' deliberate indifference, August 4, 2008 plaintiff filed another Health Services Grievance which stated: "I have been and I actively am being denied adequate mental health care. I have been and I am being totally denied adequate mental health treatment, therapy, counseling and rehabilitative treatment. Requested Resolution: Immediately provide me adequate care; (2) Investigation conducted into these violations; and (3) Disciplinary action taken against Dr. Frayne due to he is knowingly extremely corrupt and has very deliberately denied me and others treatment.
August 4, 2008 copies mailed to: Director Ottolini, Burger and Ducate."

Directive 8.9 mandated a written response to this Grievance within ten (10) business days, but it was never responded to. Defendants Frayne, Caw, Gagne, Hicock, Ottolini, Burger and Ducate -- each had the responsibility, authority and obligation to respond, act on, and remedy the violations in this Grievance, but they failed and refused to do so. They had actual and constructive notice of these Unconstitutional violations and they demonstrated deliberate indifference by failing to act.

## Unconstitutional Policies, Customs, Practices And Administrative Directives

97. The plaintiff has been diagnosed as Suffering from:
(1) Major Depression; (2) P.T.S.D.; (3) Impulse Control Disorder; (4) Anxiety Disorder; and (5) Antisocial Disorder.
It is the policy and custom of the defendants to not directly target or treat Specific diagnosed mental illness disorders. Completely inconsistent with contemporary Standards of care, the defendants have failed to provide or ensure the provision of any form of psychological care which targets or treats the above diagnosed mental illnesses of the plaintiff.

98. It is the policy, custom and practice of the defendants to fail in the completeness and legibility of medical records.

99. It is the policy, custom and practice of the defendants to allow non-psychiatric Staff, and unqualified Staff not trained in the psychiatric field, and Staff not board certified in psychiatry, to freely act on mental health Administrative Grievances. An example is defendant Hicock has acted on and responded to Grievances and he is only a nurse.

100. It is the policy, custom and practice of the defendants to deny inmates (plaintiff) access to mental health care by unreasonable barriers to access to mental health Services, by not timely acting on Inmate Requests and violating Directive 9.6 which mandates a written response to Inmate Requests

Within 15 Calendar days. Indeed the defendants have failed and refused to respond or act on the plaintiff's voluminous Inmate Requests, thereby denying him requested and needed treatment.

101. It is the policy, custom and practice of the defendants to deny inmates (plaintiff) access to mental health care by unreasonable barriers to access to mental health Services, by not timely acting on Administrative Remedy Health Services Grievances -- and by totally failing and refusing to respond to them or act on them.  Indeed the defendants have failed and refused to respond to or act on the plaintiff's voluminous Health Services Grievances in violation of Directive 8.9, thereby denying him requested and needed treatment.

102. It is the policy, custom and practice of the defendants to deny inmates (plaintiff) access to mental health care by unreasonable barriers to access to mental health Services, by retaliating against and punishing inmates (plaintiff) for seeking care for their serious mental health needs. As the defendants have done to plaintiff as described herein.

103. It is the policy, custom and practice of the defendants to deny inmates (plaintiff) access to mental health care by unreasonable barriers to access to mental health Services, by permitting unreasonable delays before inmates are seen by prescribed providers to obtain necessary treatment.

104. It is also the defendants' policy, custom and practice, to have inadequate examination and treatment rooms. Incredibly, there are intercoms and speakers in the examination and treatment rooms. The guards always listen in thereby violating inmates' rights (plaintiff's) to the medical confidential rights and laws. Additionally, this blatant unlawful violation precludes adequate treatment because inmates (plaintiff) will not openly discuss their medical and mental health problems when they know it's not confidential and numerous guards are listening in.

105. It is also the longstanding policy, custom and practice of the defendants, to with deliberate indifference fail to have or maintain adequate mental health care staff at Northern. The gross understaffing of psychiatrists, psychologists, and psychiatric social workers denied the plaintiff adequate mental health care as described herein.

106. It is also the defendants' policy, custom and practice to circumvent the Department's Objective Classification Manual, and unjustifiably lower inmates' (plaintiff's) mental health needs assessment score, in order to keep inmates at Northern, as the defendants did with the plaintiff as is described herein.

107. Defendant Lantz on January 1, 2008 revised Administrative Directive 9.6 and created a new Directive 8.9 -- and with deliberate indifference to inmates' lives, safety and well

being abolished and nullified all emergency proceeding from these Directives. Which precluded the plaintiff from receiving needed emergency treatment as described herein.

108. As a consequence of the actions and omissions of the defendants herein described, the plaintiff suffered humiliation, degradation, injury to his wrists, arms, lacerations, abrasions, serious wounds, bruises, swelling, permanent scaring, disfigurement, severe physical and mental pain, extreme suffering and damages to both his mind and body, fear, agitation, anxiety, discomfort, embarrassment and humiliation, disability, terror, creating mental and emotional anguish and distress, injury to his reputation for the truthful reporting of Department of Correction employee physical abuse and Unconstitutional acts, as well as the loss of the Constitutional rights described herein.

109. According to the Department's Administrative Directive 8.5 Mental Health Services, 7.A. Transfers. "An inmate determined by a qualified mental health professional to be an immediate risk of harm to self or others, or who is severely mentally impaired, may be transferred to a designated mental health facility." Notwithstanding the fact that the plaintiff was an immediate risk of harm to self, notwithstanding the fact that the plaintiff was severely mentally impaired, and notwithstanding the facts of the plaintiff was consecutively attempting to commit suicide, at least four (4) times, the

defendants acted as if the plaintiff's life meant nothing, and with deliberate indifference to his life, health, safety and well being **did not** transfer him to Garner or Whiting Forensic or to any other appropriate or designated mental health facility.

110. Following the Unconstitutional acts in the manner described above, the defendants in concert with each other and with other employees of the Department, deliberately failed and refused to tell the truth about the mistreatment of the plaintiff. The defendants and other employees conspired to hide the truth to evade responsibility, to engage in a **code of** silence and to further the harm and injuries suffered by the plaintiff.

## First Claim For Relief
(Declaratory Judgment pursuant to 28 U.S.C. §2201 against all defendants in their individual and official capacities)

111. Plaintiff realleges and incorporates herein by reference each and every fact of paragraphs 1 through 110.

112. There is an actual controversy between the plaintiff and the defendants concerning the existence, nature, scope and severity of the violations of plaintiff's rights under the United States Constitution.

113. The plaintiff is entitled to a declaration of his rights and remedies.

Second Claim For Relief

(Deliberate Indifference -- Failure to provide Constitutionally Adequate Medical and Mental Health Care -- against all defendants in their individual capacities, pursuant to 42 U.S.C. §1983)

114. Plaintiff realleges and incorporates by reference each and every fact in paragraphs 1 through 110.

115. By failing to provide plaintiff with, and by failing to ensure the provision of, Constitutionally adequate medical and mental health care, and by failing to summon such care, the defendants knowingly disregarded an excessive risk to the plaintiff's health and safety and knowingly subjected him to pain, and physical and mental injury, thereby violating the plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

Third Claim For Relief

(Deliberate Indifference -- Failure to provide Constitutionally Adequate Medical and Mental Health Care -- Supervisory Liability, against defendants Lantz, Murphy, Dzurenda, Strange, McGill, Choinski, Rodriguez, Levesque, Marcial, Siwicki,

Germond, Rae, Casey, Trustman, Helfand, Burger, Ottolini, Hicock, Burns, Ducate, Gaw, Frayne and Sanders in their individual capacities, pursuant to 42 U.S.C. §1983)

116. Plaintiff realleges and incorporates by reference each and every fact in paragraphs 1 through 110.

117. The defendants were personally involved in and responsible for the deliberate indifference to the plaintiff's serious medical and mental health needs in that:

a.   The defendants had the responsibility, authority and obligation to ensure the provision of, Constitutionally adequate medical and mental health care, or to summon such care -- but they failed and refused to do so;

b.   They participated directly in the Constitutional violations;

c.   After being informed of the violations, they failed to remedy the wrong;

d.   They created a policy and custom, and allowed the continuance of a policy and custom under which inmates (plaintiff) would be deprived of adequate medical and mental health care;

e.   They were deliberately indifferent in supervising and training subordinates who committed the wrongful acts described herein; and

f.   They exhibited deliberate indifference to the plaintiff's rights by failing to act on information indicating that Unconstitutional acts were occurring.

118. By failing to provide the plaintiff with, and by failing to ensure the provision of, Constitutionally adequate medical and mental health care, and by failing to summon such care, the defendants knowing disregarded an excessive risk to the plaintiff's life, health, safety and well being, and knowingly subjected him to pain, and physical and mental injury, thereby violating the plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

### Fourth Claim For Relief

(Deliberate Indifference to Plaintiff's life, health, safety and well being -- Failure To Protect -- against all defendants in their individual capacities, pursuant to 42 U.S.C. § 1983)

119. Plaintiff realleges and incorporates herein by reference each and every fact in paragraphs 1 through 110.

120. Each defendant knew that the plaintiff was severely mentally

impared and suicidal, or at an immediate risk of harm to self but failed to take appropriate steps to protect him, and knowingly disregarded an excessive risk to his life, health, safety and well being.

121. Each defendant could have taken action to protect the plaintiff and to stop him from attempting to commit suicide, and harm to self, but deliberately failed and refused to do so.

122. The defendants failed to protect the plaintiff from the excessive risk of harm in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

<u>Fifth Claim For Relief</u>

(Conspiracy -- Deliberate Indifference to Medical and Mental needs -- against all defendants in their individual capacities, pursuant to 42 U.S.C. §1985)

123. Plaintiff realleges and incorporates herein by reference each and every fact in paragraphs 1 through 122.

124. The defendants, in concert with each other and with other Department employees, conspired for purpose of depriving the plaintiff of adequate medical and mental health care.

125. The defendants engaged in all of the overt acts herein in furtherance of the conspiracy.

126. The overt acts engaged in by the defendants are evidence of an agreement among the defendants, and they were related to the promotion of the conspiracy.

127. Through and as a result of, the conspiracy, the defendants subjected the plaintiff to pain, and serious physical and mental injury, in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

## Sixth Claim For Relief

(Retaliation -- against defendants Lantz, Murphy, McGill, Choinski, Pittinger, Frayne and Rosario, in their individual capacities, pursuant to 42 U.S.C. § 1983)

128. Plaintiff realleges and incorporates herein by reference each and every fact in paragraphs 1 through 110.

129. The defendants participate in, condone, and intentionally fail to remedy, a culture and pattern and practice of severe retaliation and intimidation against inmates who report Department of Correction employee unlawfulness and abuse, and who file grievances, complaints and lawsuits against employees. The defendants have subjected the plaintiff to the acts of retaliation described herein and failed to remedy

it. The acts and omissions of the defendants caused the plaintiff suffering, pain, and physical and mental injury, in violation of the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

## State Law Claims

130. Pursuant to the provision of 28 U.S.C. §1367, the supplemental jurisdiction of this Court is invoked as to the claims stated herein, which arise under the Constitution, statutes and common law of the State of Connecticut.

131. Plaintiff realleges and incorporates herein by reference each and every fact in paragraphs 1 through 129.

132. This is an action for money damages to redress the deprivation by the defendants of rights secured to the plaintiff by the State of Connecticut.

133. The defendants with the assistance, complicity and in conspiracy with each other, subjected the plaintiff to a violation of his rights to freely speak, write and publish his sentiments and grievances under Art. I, § 4, 5 and 14 of the State Constitution, as described herein this lawsuit. The defendants subjected the plaintiff to the severe retaliation due to he filed grievances and complaints. And the deprivation of his right to adequate medical and mental health care, to be free from physical abuse and injury to his reputation for reporting D.O.C.

abuse and unlawfulness under Art. I, §§ 7, 8, 9 and 10 of the State Constitution. In the manner described herein, the defendants committed a violation of the plaintiff's State Constitutional rights under Art. I, §§ 7, 8, 9 and 10, to be free from governmental abuse, to the right to be secure in his person and reputation, and the right to adequate medical care.

134. The defendants further committed the tort of intentional and/or negligent infliction of emotional distress, in that they intentionally, negligently and/or recklessly caused the plaintiff severe emotional distress by their intentional, extreme and outrageous conduct. The acts and omissions of the defendants as outlined, were the proximate cause of the damages, pain, suffering and physical and mental injuries to the plaintiff.

## Prayer For Relief

Wherefore, plaintiff prays for relief as follows:

1. For a declaration that the defendants subjected the plaintiff to a violation of his Constitutional and State law rights;

2. For compensatory damages;

3. For punitive damages;

4.    For costs and attorneys fees ; and

5.    For all such further relief as the Court deems just and proper.

I, Duane Ziemba, hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Signed : Duane Ziemba
Duane Ziemba

Respectfully submitted
The Plaintiff
Duane Ziemba
Duane Ziemba # 128963
Northern C.I.
P.O. Box 665
Somers, CT. 06071